## PEOPLE v. O'BRIEN.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

ASSAULT—ESCAPING CRIMINAL—OFFICER—EXERCISE OF DUTY.

Where one who had been arrested for a crime broke away from the officer in an endeavor to escape, the officer was not guilty of assault in striking him with his fist on overtaking him, when there was nothing to show the blow was excessive, or more than was necessary to stop him.

Barrett and Rumsey, JJ., dissenting.

Appeal from court of general sessions, New York county.

James J. O'Brien was convicted of assault in the third degree, and he appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

James W. Ridgway, for appellant.
Charles E. Le Barbier, for the People.

INGRAHAM, J. The defendant was indicted for assault in the third degree. The person upon whom the assault was committed was not a witness. There were three witnesses, who were passengers upon a Fourth avenue car in the neighborhood of Fourteenth street in this city, called for the people. They testified that they saw a peddler pushing a cart towards the Washington Monument, on Union Square, and saw a police officer (the defendant) start to run from the south side of Fourteenth street, about 40 feet from the corner of Fourth avenue; that he ran across the square after the peddler, and, as he ran up to the peddler, reached his left hand out, and with his right hand struck the peddler from behind, knocking him down; that the police officer was in uniform at the time. Neither of these witnesses testified as to anything that happened prior to the time the officer started to run from the south side of Fourteenth street, east of Fourth avenue. They saw the peddler, at the time the officer ran after him, running out into the middle of the street, pushing his cart in front of him; that but one blow was struck, and that knocked the peddler down. This testimony, standing alone, unexplained, would undoubtedly have justified the submission of the case to the jury, and account for the indignation shown by the witnesses against the defendant. But the testimony on behalf of the defendant as to the occurrence prior to the appearance of these witnesses upon the scene put an entirely different aspect upon the defendant's action. It appeared that several peddlers, one of whom was the person upon whom the assault was alleged to have been committed, had been persistent violators of the ordinances in obstructing Fourteenth street east of Broadway; that the police officers of this district, including the captain, had endeavored to clear the street, and drive them away, but, immediately upon the officers' backs being turned, they would return to their places in the street; that on the morning in question the captain of the precinct, having received many complaints from citizens doing business on Fourteenth street, went to this locality several

times, and drove the peddlers away; that this particular peddler·
upon whom the alleged assault was committed had been driven
away a dozen times, and that within about 10 minutes after the·
captain went away the peddler came back; that the captain then
went to the station house, and instructed the defendant, who was
one of the patrolmen, to go to Fourteenth street, and arrest the
peddlers there; to get the man on the post, and make several ar-
rests, and bring them to the station house. It further appeared
that in pursuance of these orders the defendant went to Fourteenth
street, and arrested two men, one of whom was this peddler in ques-
tion. These two men had thus been arrested in the act of violating
the law, and were clearly guilty of a misdemeanor. While this
officer was conducting these men under arrest to the station house,
carrying out the orders of his superior officer, as he was in duty
bound to do, they escaped from his custody, running in different di-
rections, the peddler upon whom the alleged assault was committed
running uptown towards Washington Monument, and the other
towards Broadway. The defendant then called upon the officer
on the post to arrest the one running towards Broadway, and he
started after the one running towards the Washington Monument.
There were several witnesses called for the defendant who saw the
occurrence. They testified that the officer did not strike the peddler,
but grabbed at him, and as he reached him they both fell ·together.
But, assuming that the occurrence as narrated by the witnesses for
the people was correct, as the jury were entitled to find, and that.
this officer, running after this escaped prisoner, struck him with
his fist when he reached him, we do not think that the· officer was,
under such circumstances, guilty of an assault. This peddler had
been arrested for the commission of a crime, and was in custody
when he broke away and endeavored to escape, and it was the duty·
of the officer to follow and rearrest him, and to use the force neces-
sary for that purpose. There is nothing to show that the blow
was excessive, or more than was necessary to stop this prisoner··
endeavoring to escape from custody; and there was no evidence·
of bodily injury after he was taken in custody. These facts are·
proved, not only by the police officer, but by several independent
and apparently disinterested witnesses, who had no apparent mo-
tive for testifying untruthfully, and who were not in the slightest
degree contradicted. That a police officer who is pursuing a per-
son who has been arrested for a crime, and who is endeavoring to·
escape, is justified in using the necessary force to prevent the es-
cape, cannot be disputed; and when this peddler broke away from
the officer the latter was entirely justified in pursuing and capturing
him, and, if necessary, in striking him to prevent his escape. Con-
sidering the locality and the circumstances, we cannot say that
this man would not have escaped had not the officer used the force
that he did, and under such circumstances the criminal charge of
assault could not be predicated upon a simple blow of the fist, used
to prevent an escape. A police officer in the arrest of criminals has
to act on the appearances as they are presented at the time in the·
excitement of the moment, and to sustain this conviction would

be to punish the officer for obeying the orders of his captain, and for the efficient discharge of his duty, and not for the commission of a crime.

We think that the conviction was an injustice to the defendant, and that the judgment appealed from should be reversed.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

BARRETT, J. (dissenting). I think the question of fact was for the jury. The peddler could not have been escaping when the defendant struck him. He was pushing his cart. There was no suggestion from any witness that he abandoned his cart and ran. It is difficult to see how he could have run away while holding onto his cart. His speed, when thus hampered, could not have been very great. The jury were justified, in my judgment, in finding that the blow, under the circumstances, was unnecessary and punitive.

RUMSEY, J., concurs.